NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250269-U

NO. 4-25-0269

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 2, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JESSE GARMON, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Fulton County |
| KWAME RAOUL, in His Official Capacity as Attorney | ) | No. 24MR10 |
| General of the State of Illinois, and BRENDAN KELLY, | ) | |
| in His Official Capacity as Director of the Illinois State | ) | Honorable |
| Police, | ) | Bruce C. Beal, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Grischow and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court properly dismissed plaintiff's declaratory judgment action alleging that the statutory requirement to register as a sex offender violates the proportionate penalties clause as applied to him.

¶ 2    In 1992, plaintiff Jesse Garmon was convicted of a misdemeanor sex offense, which did not require him to register as a sex offender. A subsequent change in the law triggered his obligation to register after his conviction of a new felony. He then initiated this civil action seeking to establish that the sex offender requirements as applied to him violate the proportionate penalties clause of the Illinois Constitution (Ill. Const. of 1970, art. I, § 11). The trial court dismissed his complaint, and he now appeals. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4                                  A. Initial Charges

¶ 5 In 1992, Garmon, aged 20 at the time, began a sexual relationship with his then 15-year-old girlfriend, and he was charged in Mason County case No. 92-CM-22 with criminal sexual abuse, a Class A misdemeanor. Ill. Rev. Stat. 1991, ch. 38, ¶ 12-15(c) (now 720 ILCS 5/11-1.50(c) (West 2024)). He eventually pleaded guilty and was sentenced to a term of probation, plus 30 days in jail. At the time, Garmon's conviction was not one which required him to register as a sex offender in the Illinois Sex Offender Registry (Registry) under section 2 of the Sex Offender Registration Act (Act) (730 ILCS 150/2 (West 1992)).

¶ 6 B. Subsequent Statutory Amendments

¶ 7 The Act was amended in 2010 by Public Act 96-1551 (eff. July 1, 2011) adding misdemeanor criminal sexual abuse under section 11-1.50(c) to the definition of a sex offense that triggers registration. 730 ILCS 150/2 (West 2012). The amendment did not automatically apply retroactively, *i.e.*, Garmon was not required to register as a result of his earlier conviction. However, the Act was further amended in 2011 by Public Act 97-578 (eff. Jan. 1, 2012) to state that "[a] sex offender *** who has never previously been required to register under this Act, has a duty to register if the person has been convicted of any felony offense after July 1, 2011." 730 ILCS 150/3 (West 2012).

¶ 8 C. 2012 Guilty Plea and Registration

¶ 9 In 2012, Garmon was charged in Fulton County case No. 12-CF-141. We may take judicial notice of public court records (*People v. Johnson*, 2021 IL 125738, ¶ 54; *People v. Green*, 2024 IL App (1st) 231167, ¶ 3 n.1)), and we do so here to understand the charged offenses in this 2012 case. Specifically, the public docket of this case shows that Garmon was charged with aggravated domestic battery (720 ILCS 5/12-3.3 (West 2012)) and aggravated battery (*id.* § 12-3.05). He pleaded guilty in October and received six years in prison as part of the plea deal.

¶ 10          In 2018, Garmon was released from the Illinois Department of Corrections and registered as a sex offender.

¶ 11                              D. 2020 Guilty Plea and Registration

¶ 12          Later in 2020, Garmon was charged in Mason County case No. 20-CF-57. The public docket shows that his charge was for being temporarily absent from his registered address for three or more days without notifying the proper authorities, a Class 3 felony. 730 ILCS 150/3 (West 2020). In September of that year, he pleaded guilty and was released later the same month.

¶ 13                              E. Declaratory Judgment Action

¶ 14          In January 2024, Garmon first attempted to file an administrative action to challenge the registration requirement before being informed by the Illinois State Police that it was not the appropriate procedural mechanism to do so. In April, Garmon initiated a declaratory judgment action under section 2-701 of the Code of Civil Procedure (Code) (735 ILCS 5/2-701 (West 2024)), arguing that the registration requirements were unconstitutional as applied to him. He also sought an injunction "enjoining defendants from further enforcing 730 ILCS 150/2 [(West 2024)]" and compelling his removal from the Registry. After filing his pleading, Garmon indicated that he was challenging "any and all registration requirements via the Sex Offender Registration Act, 730 ILCS 150/1, *et seq* [(West 2024)], or similar provisions," the classification and burdens of sex offender registration, and requirements implicated by the registration.

¶ 15          Defendants filed a motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2024)), which permitted them to seek dismissal on separate statutory bases. One component of defendants' motion argued that dismissal was appropriate under section 2-619 of the Code (*id.* § 2-619) because the claims were barred by the doctrine of sovereign immunity and the action was an improper collateral attack on Garmon's criminal convictions. Separately,

defendants argued that dismissal was appropriate under section 2-615 because Garmon failed to comply with the pleading standard under section 2-603. *Id.* §§ 2-603, 615. The trial court granted the motion to dismiss on the latter basis without addressing the arguments under section 2-619.

¶ 16    This appeal followed.

¶ 17                                II. ANALYSIS

¶ 18    On appeal, Garmon argues this court should reverse and remand for further proceedings because the claims set forth in the declaratory action sufficiently alleged violations of the proportionate penalties clause (Ill. Const. of 1970, art. I, § 11), such that the pleading standard in section 2-615 was satisfied. Defendants disagree.

¶ 19                      A. Dismissal Under Section 2-615

¶ 20    Because dismissal below was pursuant to section 2-615 of the Code, we review the trial court's ruling under the terms of that provision. A motion to dismiss under section 2-615 contests the legal sufficiency of a complaint based on defects apparent on its face. *Dent v. Constellation NewEnergy, Inc.*, 2022 IL 126795, ¶ 25. When reviewing a section 2-615 motion, a court is limited to considering the facts apparent on the face of the pleadings, including any attached exhibits. *Id.*; *Lincoln University v. Logan County*, 2025 IL App (4th) 241012, ¶ 32, *pet. for leave to appeal denied*, No. 132594 (Mar. 25, 2026). During this inquiry, all well-pleaded facts and reasonable inferences are accepted as true. *Heastie v. Roberts*, 226 Ill. 2d 515, 531 (2007). A question of law may be decided when ruling on a section 2-615 motion. See 735 ILCS 5/2-615 (West 2024) (allowing courts to dismiss a cause of action based on a pleading that is "insufficient in law"); see also *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 348 (2003) (stating that to survive dismissal, the alleged facts must be sufficient to bring the claim within a legally recognized cause of action, meaning that the pleading must be both legally and factually sufficient).

¶ 21    The standard of review of an order of dismissal under section 2-615 is *de novo*. *Dent*, 2022 IL 126795, ¶ 25.

¶ 22                    B. Determining Whether the Statute is Punitive

¶ 23    The premise of Garmon's proportionality clause challenge is his contention that the registration requirements as applied to him constitute a punishment; from that premise, he argues that his punishment is disproportionate to his offense. Defendants argue, in turn, that the action cannot lie, in part, because the complained-of requirements are not a punishment at all, but merely collateral consequences.

¶ 24    The proportionate penalties clause in the Illinois Constitution states that "[a]ll *penalties* shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Emphasis added.) Ill. Const. 1970, art. I, § 11. In assessing whether the registration provisions at issue constitute a "penalty" under the proportionate penalties clause, we are not writing on a blank slate. The Illinois Supreme Court has already ruled—albeit in a slightly different context—that it is not.

¶ 25    In *Kopf v. Kelly*, 2024 IL 127464, ¶ 93, a person on the Registry brought a declaratory action challenging the constitutionality of the registration requirements under various constitutional provisions, including the *ex post facto* clause. Similar to the issue here, the plaintiff in *Kopf* argued that the requirements related to registration—including those pertaining to notification, presence, and residency—were punitive in nature. *Id.* ¶¶ 65, 105. The plaintiff pointed specifically to "ever increasing requirements," such as, for example, abiding by presence and residency restrictions, furnishing information about online activity to law enforcement, and annually renewing his driver's license. *Id.* ¶ 99. The supreme court disagreed that any of these requirements constituted punishment. *Id.* ¶¶ 105, 112. Citing to ample precedent for support, the

supreme court reasoned that the requirements have a rational connection to nonpunitive purposes, including dissemination of truthful information, transparency, protecting children, and public safety. *Id.* ¶¶ 101-04, 112. Furthermore, it reasoned that the aims of the statute are not to banish or shame or to function as retribution. *Id.* ¶¶ 107-10.

¶ 26      It is true, as Garmon points out, that *Kopf* addressed a different constitutional guarantee: the *ex post facto* clause of the United States Constitution. Garmon argues that the question presented here is different: whether the requirements triggered by registration constitute punishment under the Illinois proportionate penalties clause. However, we cannot agree that the same question—whether the statute is punitive—can be answered differently depending on which constitutional provision is at issue.

¶ 27      As noted above, *Kopf* determined that the relevant requirements are not "punitive in nature." *Id.* ¶ 105. Garmon's task here is to provide a cogent basis for concluding that a statute the supreme court has established is *not* a penalty in one context (*ex post facto* clause) is nonetheless a penalty in a different one (proportionate penalties). However, this court has repeatedly used the same test as used in *Kopf* in deciding the foundational question of whether the statute is punitive in nature. See, *e.g.*, *In re A.C.*, 2016 IL App (1st) 153047, ¶¶ 72-77 (holding that the applicable requirements do not constitute punishment under the proportionate penalties clause based on supreme court precedent addressing the issue in the context of an *ex post facto* challenge); *People v. Grochocki*, 343 Ill. App. 3d 664, 670-71 (2003) (same).

¶ 28      Indeed, this is the test that applies even in the cases on which Garmon most relies: the now-vacated decision in *People v. Tetter*, 2018 IL App (3d) 150243, ¶ 2, vacated by *People v. Tetter*, 116 N.E.3d 918 (2019), and *Does #1-5 v. Snyder*, 834 F.3d 696, 701-05 (6th Cir. 2016), *cert. denied*, 583 U.S. 814 (2017). We particularly note that *Synder* is, like *Kopf*, an *ex post facto*

- 6 -

challenge, which undercuts Garmon's own argument that *Kopf* should not be applied here because it is an *ex post facto* case.

¶ 29    The Illinois Supreme Court determined in *Kopf* that the statutory provisions at issue here do not constitute punishment. That is the same predicate question that must be answered here, although it is relevant to a claim under the proportionate penalties clause rather than the *ex post facto* clause. The proportionate penalties clause is a matter of Illinois constitutional law. Its interpretation cannot be predicated on the actions of sister states (*People v. Clemons*, 2012 IL 107821, ¶ 32), and no federal court can determine the meaning of Illinois constitutional provisions (*Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶ 79). The Illinois Supreme Court is the final arbiter of Illinois law. *Hampton v. Metropolitan Water Reclamation District of Greater Chicago*, 2016 IL 119861, ¶ 9. We conclude that *Kopf* requires us to draw the same conclusion it reached: the statute at issue is not punitive.

¶ 30    Garmon argues that, even if that is our inclination, the issue cannot be finally resolved on a section 2-615 motion. Still, he acknowledges that the question of whether a statute is punitive is essentially one of law; in other words, the answer does not change from one litigant to the next, and there is no case-specific allegation of fact that would affect the question of whether the legislature acted with punitive intent or effect. While Garmon correctly notes that a remand was ordered in *Kopf*, that relief was awarded on different claims; the supreme court affirmed the section 2-615 dismissal of the *ex post facto* claims that required determination of the punitive nature of the statute. *Kopf*, 2024 IL 127464, ¶¶ 65, 112.

¶ 31    For the foregoing reasons, we conclude that *Kopf* requires rejection of Garmon's proportionate penalties argument.

¶ 32                    C. Recent Amendments

- 7 -

¶ 33    Garmon further attempts to limit the reach of *Kopf* by arguing that even if the requirements triggered by registration did not constitute punishment before, it constitutes punishment now that various amendments have increased the stringency of the requirements.

¶ 34    However, many of the substantive amendments occurred before or during 2018, so they were necessarily at issue in *Kopf*. For example, many of the restrictive amendments prohibiting Garmon from being in public parks or near playgrounds and being required to renew his driver's license annually were implemented before *Kopf* and were accounted for there. See *id.* ¶¶ 96-99.

¶ 35    The subsequent amendments to the statutory scheme are not the ones Garmon specifically points to as punitive in nature. For example, the recent amendment to section 2 pertained to the definitions of commercial sexual exploitation, prostitution, child pornography, and the underlying sex offenses themselves, none of which are at issue here. 730 ILCS 150/2 (West 2024) (amended by Public Act 104-245 (eff. Jan. 1, 2026) and Public Act 103-1071 (eff. July 1, 2025)). Various portions of the Act were amended to direct the Division of Justice Services to implement additional functions pertaining to the Law Enforcement Agencies Data System (LEADS) and to adopt reasonable rules pursuant to the Act that would help create a central repository for criminal history record information. 730 ILCS 150/1 *et seq.* (West 2022) (amended by Public Act 102-538 (eff. Aug. 20, 2021)). Furthermore, various portions of the Act or related laws changed the restrictions on who could obtain a name change, implemented name change reporting requirements, added procedures for objections to name changes, and created a slightly different standard and presumption with respect to notice of the name change. See 730 ILCS 150/1 *et seq.* (West 2022) (amended by Public Act 102-1133 (eff. Jan. 1, 2024)); see also 735 ILCS 5/21-101 (West 2024) (amended by Public Act 103-1063 (eff. Mar. 1, 2025)). These relatively minor

adjustments do not materially change the nature of the statute that the supreme court decided in *Kopf* is not punitive.

¶ 36                                  III. CONCLUSION

¶ 37          For the reasons stated, we affirm.

¶ 38          Affirmed.